UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GASPAR DRAKE,<br><br>　　　　　Petitioner,<br><br>　　v.<br><br>J. GASTELO,<br><br>　　　　　Respondent. | Case No. 1:18-cv-00523-NONE-JDP<br><br>FINDINGS AND RECOMMENDATIONS TO DENY PETITION FOR HABEAS CORPUS AND TO DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS<br><br>ECF No. 1 |

Petitioner Gaspar Drake, a state prisoner without counsel, seeks a writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. Petitioner claims that the trial court improperly excluded the testimony of two witnesses necessary to his defense, in violation of his compulsory process rights. *See id.* at 24. The respondent argues that petitioner's claim of state-law evidentiary error does not entitle him to relief. *See* ECF No. 16 at 11-16. For the reasons stated below, we recommend that the court deny the petition.

**I.　Background**

In 2015, a jury sitting in Kings Court Superior Court convicted petitioner of battery on a non-prisoner and obstructing a correctional officer in the performance of his duties. *Id.* at 1.

Petitioner was sentenced to three years and four months imprisonment.[1] *Id*. We set forth below the facts of the underlying offenses, as stated by the California Court of Appeal. A presumption of correctness applies to these facts. *See* 28 U.S.C. § 2254(e)(1); *Crittenden v. Chappell*, 804 F.3d 998, 1010-11 (9th Cir. 2015).

**The Testimony**

Correctional Officer Angela Scaife was employed at Corcoran State Prison on the day in question. She was assigned to perform patdown searches of prisoners exiting the dining hall. Drake was one of the prisoners she searched that day. When Scaife asked Drake to approach for a search, he appeared irritated but approached as directed. When Scaife searched Drake's waist area, he pulled away and turned towards her. Drake complained about the search of the waist area, and became argumentative. Scaife explained a search of the waistband was necessary, but Drake continued to argue with her. She told Drake to return to his cell, but he continued to argue. Correctional Officer Bill Johnson ordered Drake to return to his cell. Drake began walking towards Johnson, and threatened Johnson.

As Drake and Johnson approached each other, Scaife ordered Drake to turn around and put his hands behind his back. Instead of complying with Scaife's order, Drake struck Johnson on his left arm. Two other officers, Officer Flores and Sergeant Jesus Gonzales, approached to provide assistance, and Drake backed away. As he did so, he tripped and fell to the ground. The officers ordered Drake to lie down on his stomach, but Drake attempted to stand up. Flores sprayed Drake with pepper spray, after which Drake was compliant with orders.

Johnson testified that Drake was initially compliant with Scaife's orders, but became tense when she began searching his waistband. Drake became argumentative and confrontational. When the search was completed, Drake was ordered to return to his cell.

Drake initially walked away from Scaife, but when he was approximately 10 feet away, he turned to face the officers. Drake was ordered by both Scaife and Johnson to return to his housing unit. Drake threatened to "kick [Johnson's] ass." Johnson ordered Drake to turn around with the intent of placing Drake in handcuffs. Drake approached Johnson in a rapid manner and swung at Johnson's face. Johnson raised his hands to protect himself and the punch hit him in the forearm. Johnson stepped back and other officers subdued Drake. Johnson saw Drake fall, and believed another officer forced him to the ground.

---

[1] Although it appears that petitioner in no longer in custody, his petition is not moot. Where a petitioner challenges the validity of his criminal conviction, we presume collateral consequences sufficient to satisfy the case-or-controversy requirement exist even after he is released from custody. *See Spencer v. Kemna*, 523 U.S. 1, 8 (1998).

> Gonzales testified he was present during the search of Drake. After the search, Drake turned around and made a comment to Scaife. Drake told Scaife to stop pulling on his waistband. Scaife told Drake it was a normal part of the search and he should return to his cell. Drake began walking away and then turned and threatened to "kick [Johnson's] ass." Johnson and Scaife approached Drake and ordered him to turn around and put his hands behind his back so he could be placed in handcuffs. Drake took a step toward Johnson and swung at Johnson.
>
> After Drake hit Johnson, Gonzales withdrew his baton and approached Drake. Drake took a step backward and tripped, falling to the ground. When Drake attempted to stand up, Gonzales swung his baton at Drake, but accidentally hit Flores on the thumb. Scaife escorted Flores from the area. Drake again attempted to stand up. Gonzales struck Drake on the left forearm with his baton. Drake finally placed himself in the prone position.
>
> Drake testified in his defense. He admitted that Scaife searched him when he exited from breakfast. He asserted that when she did so, she gave him a "wedgy" by pulling his underwear up between the cheeks of his buttocks. This upset Drake, and as he left he told her to stop giving him wedgies when she searched him, as the same thing had happened in the past. As Drake continued to walk away, Johnson commented that Drake should have a shootout with the police. Drake understood the comment to indicate that Drake should be dead, which was insulting. Drake responded that Johnson should become a real police officer instead of a babysitter. Several of the correctional officers laughed at Drake's comment. As Drake continued to walk away, he heard someone say "watch out." Drake turned around and found Johnson behind him with Johnson's hand almost in his face. Drake brushed Johnson's hand away from his face. That's when Flores sprayed pepper spray in his face. Drake bent over while he choked on the pepper spray. He then felt someone hit him on the arm, which caused him to fall down. Drake denied swinging at Johnson.
>
> **Arguments**
>
> The prosecutor argued the correctional officer testimony was credible, and Drake's was inherently unbelievable. Defense counsel argued the inconsistencies in the correctional officers' testimony were the result of the fabrication of a story to cover up for the excessive use of force.

*People v. Drake*, No. F072184, 2017 LEXIS 2143, at *2-6 (Cal. Ct. App. Mar. 27, 2017).

## II. Discussion

### A. Standard of Review

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75

3

(2000). Section 2254 of Title 28, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), governs a state prisoner's habeas petition. *See Harrington v. Richter*, 562 U.S. 86, 97 (2011). To decide a § 2254 petition, a federal court examines the decision of the last state court that issued a reasoned opinion on petitioner's habeas claims, *see Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In general, § 2254 requires deference to the state-court system that determined the petitioner's conviction and sentence.

Under AEDPA, a petitioner may obtain relief on federal habeas claims that have been "adjudicated on the merits in state court proceedings" only if the state court's adjudication resulted in a decision (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

If obtaining habeas relief under § 2254 is difficult, "that is because it was meant to be." *Richter*, 562 U.S. at 102. As the Supreme Court has put it, federal habeas review "disturbs the State's significant interest in repose for concluded litigation, denies society the right to punish some admitted offenders, and intrudes on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id*. at 103 (citation omitted). Our habeas review authority serves as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id*. at 102-03 (emphasis added).

This court reviews the last reasoned opinion—in this case, that of the Court of Appeal. Because the Court of Appeal rejected petitioner's claim on the merits, the deferential standard of § 2254 applies to his claim.

**B.     Exclusion of Witnesses**

Petitioner claims that the trial court erred when it excluded the testimony of two potential defense witnesses, violating his Sixth Amendment constitutional right to compulsory process. ECF No. 1 at 24. The Court of Appeal rejected petitioner's claim, finding the trial court's exclusion of the evidence reasonable in light of the evidence presented at trial.

First, if petitioner can show that the Court of Appeal's decision rejecting his claim on the

4

merits was "contrary to, or involved an unreasonable application of, clearly established Federal law" as determined by the U.S. Supreme Court, he may be granted relief. 28 U.S.C. § 2254(d)(1). Although "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense,'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683 690 (1986)), "only rarely" has the Supreme Court "held that the right to present a complete defense was violated by the exclusion of defense evidence under a state rule of evidence." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013). The Supreme Court has not announced a legal standard for federal courts to use in evaluating a trial court's application of "garden-variety" evidentiary rules. *See Robertson v. Pichon*, 849 F.3d 1173, 1189 (9th Cir. 2017). However, petitioner may be granted relief if he can show that his federal constitutional due process rights were violated.

A criminal defendant's right to introduce evidence at trial may be restricted by reasonable state evidentiary rules without violating his right to due process, *see United States v. Scheffer*, 523 U.S. 303, 308 (1998), and the exclusion of evidence that is only marginally relevant does not result in a due process violation, s*ee Crane*, 476 U.S. at 689-90; *LaGrand v. Stewart*, 133 F.3d 1253, 1266 (9th Cir. 1998) (There is no requirement "that a defendant must be allowed to put on any evidence he chooses."). States have "broad latitude" to enact rules allowing for the exclusion of evidence in criminal trials, so long as they are not "arbitrary" or "disproportionate to the purposes they are designed to serve." *Scheffer*, 523 U.S. at 308.

Here, the trial court, in its discretion under California Evidence Code § 352, excluded the testimony of two of petitioner's fellow inmates.[2] *See Drake*, No. F072184, 2017 LEXIS 2143, at *7. Petitioner sought to introduce testimony that Officer Jackson used excessive force against the two witnesses in previous unrelated incidents. *See* ECF No. 17-7 at 34-35. No evidence was presented that Johnson used excessive force against petitioner during the incident in question.

---

[2] California's Evidence Code § 352 is comparable to Federal Rule of Evidence 403, which allows courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

5

| | |
|---|---|
| 1 | *See id.* at 14, 25.[3] The trial court found that petitioner did not testify to a "face-to-fact |
| 2 | confrontation" with Johnson, but rather that an "innocent inadvertent contact" occurred between |
| 3 | petitioner and Johnson. *See id.* at 36. The trial court reasoned that the probative value of the |
| 4 | testimony was "very marginal" and that the proposed testimony had the potential for "misleading |
| 5 | or confusing the jury on unrelated or irrelevant issues and attenuating the proceedings |
| 6 | unnecessarily." *Id.* The Court of Appeal found that the trial court did not err in excluding the |
| 7 | proposed testimony of the two witnesses because it "had virtually no relevance to the issues to be |
| 8 | decided by the jury." *Drake*, No. F072184, 2017 LEXIS 2143, at *7. The evidence may have |
| 9 | shown, at most, that Johnson had a propensity for approaching inmates from behind without |
| 10 | warning. *Id* at 8. |
| 11 | We cannot find that petitioner's federal due process rights were violated through the |
| 12 | exclusion of the witnesses. It was well within the trial court's discretion to deem the potential |
| 13 | testimony irrelevant and exclude the witnesses under California Evidence Code § 352, a rule that |
| 14 | is neither arbitrary nor disproportionate. *See Scheffer*, 523 U.S. at 308. The potential testimony |
| 15 | was either completely irrelevant to petitioner's defense, or at best minimally relevant, because |
| 16 | petitioner did not claim that Johnson used excessive force *against him*.[4] Therefore, the Court of |
| 17 | Appeal's decision to uphold the trial court's exclusion of the two witnesses was contrary to, or an |
| 18 | unreasonable application of, clearly established federal law. *See Wright v. Van Patten*, 552 U.S. |
| 19 | 120, 126 (2008). |
| 20 | Second, the Court of Appeal's decision was not based on an unreasonable determination |
| 21 | of the facts presented at trial. *See* 28 U.S.C. § 2254(d)(2). There were virtually no facts |

---

[3] Petitioner testified that Johnson approached him from behind. When petitioner turned around to face him, Johnson's hand was near his face. Petitioner then brushed Johnson's hand away from him. *See* ECF No. 17-7 at 14, 25.

[4] Even if petitioner had advanced an argument at trial that Johnson used excessive force against him, the trial court may have reasonably excluded the proposed testimony of Johnson's prior bad acts against others as inadmissible propensity evidence. *See* Cal. Evid. Code § 1101 (West 2015).

6

presented at trial to support the relevancy of the witnesses' proposed testimony. The Court of Appeal reasonably found that the proposed testimony was irrelevant.

Finally, even if a federal constitutional violation arose from the exclusion of the witnesses, any error was harmless. The limited value of the witnesses' potential testimony allows us to conclude that any error "did not have a substantial and injurious effect or influence in determining the jury's verdict," and was therefore harmless.[5] *See Harris v. Ochoa*, No. 10cv2215-BTM (NLS), 2011 U.S. Dist. LEXIS 60079, at *4-5 (S.D. Cal. June 3, 2011) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

### III. Certificate of Appealability

A petitioner seeking a writ of habeas corpus has no absolute right to appeal a district court's denial of a petition; he may appeal only in limited circumstances. *See* 28 U.S.C. § 2253; *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). Rule 11 Governing § 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. *See also* Ninth Circuit Rule 22-1(a); *United States v. Asrar*, 116 F.3d 1268, 1270 (9th Cir. 1997). A certificate of appealability will not issue unless a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires the petitioner to show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *accord Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Here, petitioner has not made a substantial showing of the denial of a constitutional right. Thus, we recommend that the court not issue a certificate of appealability.

### IV. Findings and Recommendations

The court should deny the petition for a writ of habeas corpus, ECF No. 1, and decline to issue a certificate of appealability. These findings and recommendations are submitted to the

---

[5] At trial, the prosecution presented evidence from the three officers involved in the incident: Scaife, Johnson, and Gonzales. All three officers testified that petitioner threatened to hurt Johnson, swung his hand at Johnson's face, and punched Johnson in his forearm. *See Drake*, No. F072184, 2017 LEXIS 2143, at *2-5.

7

U.S. District Court judge presiding over this case under 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty days of the service of the findings and recommendations, petitioner may file written objections to the findings and recommendations with the court and serve a copy on all parties. That document must be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will then review the findings and recommendations under 28 U.S.C. § 636(b)(1)(C).

IT IS SO ORDERED.

Dated: March 30, 2020

_____
UNITED STATES MAGISTRATE JUDGE

No. 206.